IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WILLIAM E. WEIDMAN                                                                                        PLAINTIFF

       v.                                         Civil No. 12-2322

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                                        DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, William E. Weidman, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background**

      Plaintiff applied for SSI and DIB on August 4, 2010. (Tr. 17.)  Plaintiff alleged an onset date of March 23, 2010 due to mental issues. (Tr. 17, 189.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on August 9, 2011. (Tr. 35.)  Plaintiff was present to testify and was represented by counsel.  The ALJ also heard testimony from Rachel Davenport, a former work supervisor of Plaintiff, and Vocational Expert ("VE") Larry Seifert. (Tr. 35, 53.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, Plaintiff was 50 years old, and possessed an Associate's degree in general education. (Tr. 38.) The Plaintiff had past relevant work experience ("PRW") as a landscape laborer, warehouse laborer, and landscape specialist. (Tr. 27.)

On November 7, 2011, the ALJ concluded that Plaintiff had the following severe impairments: "impulse control disorder, bipolar disorder, anxiety disorder, personality disorder, and polysubstance dependence in reported remission." (Tr. 19.) The ALJ found that Plaintiff maintained the residual functional capacity to perform the full range of work at all exertional levels, but had the following nonexertional limitations: "the claimant is limited to work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and use of little judgment, the supervision required is simple, direct, and concrete, and there is no contact with the general public." (Tr. 22.) With the assistance of the VE, the ALJ determined that the Plaintiff could perform his past relevant work because it did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 27.)

The Appeals Council denied Plaintiff's appeal on October 25, 2012. (Tr. 1.)

**II.      Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible

"to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion

Plaintiff raises four issues on appeal: 1) the ALJ erred by not fully and fairly developing the record; 2) the ALJ erred at Step Two; 3) the ALJ erred in his credibility analysis; 4) the ALJ erred in his

3

assessment of Overall RFC. (Pl.'s Br. 5, 6, 8, 13.) Because this Court finds that the ALJ did not fully and fairly develop the record and erred in the credibility analysis, issues 2 and 4 will not be addressed.

### A. Failure to Fully and Fairly Develop the Record

#### 1. Missing Physical RFC and Illegible Mental RFC

It is well-settled in the Eighth Circuit that a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). "An administrative law judge may not draw upon his own inferences from medical reports."*Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

Consulting physician Dr. Van Hoang, M.D. examined Plaintiff and found him to have a twenty-percent loss of hearing and noted that the Plaintiff could not hear normal conversation without turning his head. He also noted a ten-percent loss of flexion in the lumbar spine. (Tr. 330.) He assessed "mild physical limitation for work." (Tr. 332.) Plaintiff provided medical records supporting Dr. Hoang's diagnosis. (Tr. 253-57.) However there is no Physical RFC form in the record.

Regarding Plaintiff's mental impairments, the ALJ gave "little weight" to treating physician Dr. Beyga's Mental RFC. (Tr. 26.) He gave "great weight" to the Mental RFC completed by non-examining phsycian Dr. Woodson-Johnson. (Tr. 26.) However, with the exception of one typed sentence, Dr. Woodson-Johnson's functional capacity assessment is illegible. An apparent technical difficulty misaligned the columns used in the functiomal assessment, with a final result more akin to a sudoku puzzle than an RFC assessment. This misalignment makes it impossible to determine what level of limitation has been assigned for any skill/ability. (Tr. 345.) Given the importance of the RFC to the disability determination process, guessing which "X" is closer to which number to assess Plainitff's functional limitations in the workplace is not acceptable.

Because there is no physical RFC, and because the Mental RFC that the ALJ relied upon is illegible, the ALJ erred in developing the record.

**2. Mischaracterization of Treating Physician Dr. Beyga's Records and Treatment of Commissioner's Consultative Examiner Dr. Kralik's Mental Assessment**

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). Once the ALJ is made aware of a crucial issue that might change the outcome of a case, the ALJ must conduct further inquiry to fully develop the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004.); *see e.g. Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010) (ALJ's failure to recontact Commissioner's consultative physician to authenticate his report was reversible error when that report supported Plaintiff's claim).

The ALJ gave "little weight" to treating physician Dr. Ewa Beyga's letter and Mental RFC because he found them inconsistent with Dr. Beyga's own treatment notes. (Tr. 26.) Specifically, the ALJ found that Dr. Beyga's treatment notes revealed "no indication that the claimant experienced significant deficits in concentration or memory" and "no significant abnormalities in the claimant's social functioning." (Tr. 25.) However, a close examination of Dr. Beyga's notes reveals a long list of functional limitations, including "serious limitation" in communication, behavior norms, peers/social, and problem solving. She also notes "moderately serious limitation" in productivity and work and "very serious limitation" in coping skills. He is marked as a moderate risk to others. (Tr. 303.) In the Master Treatment Plan document, Dr. Beyga noted that Plaintiff's disorders "resulted in functional impairment which substantially (GAF 60 or below)" interferes with or limits the role of functioning in one or more major life areas." (Tr. 314.) Dr. Beyga's treatment records indicate the Plaintiff's medication were

5

effective for targeted symptoms, but also note continued emotional instability despite several medication modifications. (Tr. 366-67, 382.) Dr. Beyga submitted a letter in July 2011 and a Mental RFC in August 2011. (Tr. 390, 392 .) Both of these supported Plaintiff's allegations of mental impairment. (Tr. 390-94.) The letter indicated that Plaintiff was very compliant with medications, and had tested clean and sober, but "still suffered from breakthrough symptoms." (Tr. 390.) The Mental RFC indicated severe limitations for ability to maintain attention and concentration for extended periods, ability to work in coordination with or proximity to others, and ability to accept instructions and respond appropriately to criticism from supervisors. She noted marked and moderate limitations in a number of other areas. (Tr. 394.) Her comment on the RFC states that "Mr. Weidman's symptoms significantly affect his ability to function socially and occupationally. He struggles with mood instability and angers easily. He has a history of loss of control and severe depression." (Tr. 394.)

After carefully reviewing all of Dr. Beyga's documents in the record, this Court cannot find inconsistency between her treatment notes, her letter, and her Mental RFC. Given that Dr. Beyga is both Plaintiff's treating physician and is board-certified in psychiatry and neurology,(Tr. 391.), this Court is particularly troubled by the ALJ's mischaracterization of her medical record notations. *See Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) ("when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight"); *Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010)("Greater weight is generally given to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist." (quoting *Thomas v. Barnhart*, 130 Fed.Appx. 62, 64 (8th Cir.2005); *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) ("the ALJ is not free to ignore medical evidence").

The ALJ also discounted the results of the Commissioner's consulting examiner Dr. Kralik because the examination "was rendered early in claimant's treatment before the effectiveness of treatment was apparent and is inconsistent with claimant's subsequent treatment records." (Tr. 26.) Dr.

Kralik examined Plaintiff on September 13, 2010. (Tr. ) This was eleven days after the Plaintiff left in-patient treatment at Bridgeway. (Tr. 320.) Dr. Kralik opined that he was significantly impaired for occupational purposes in his capacity to communicate in a socially adequate manner. (Tr. 297.) She found that he was moderately to possibly significantly impaired for occupational purposes in his capacity to communicate in an intelligible and effective manner and his capacity to cope with the typical mental cognitive demands of' basic work-like tasks (at least at present). (Tr. 297.) Her prognosis for behavioral change in coming year was guarded. (Tr. 298.) While her exam was quite soon after the Plaintiff left inpatient treatment, it also appears to be consistent with Dr. Beyga's Mental RFC in August 2011, and clearly supports the Plaintiff's claim. Therefore, if the ALJ was troubled by the timing of the Commissioner's consultative exam, he had a duty to fully develop the record by ordering a second exam with Dr. Kralik or with another consultative examiner. Moreover, this Court notes that the illegible Mental RFC completed by a non-examining physician and given "great weight" by the ALJ was completed on October, 14, 2010, a mere four weeks after Dr Kralik's examination.

### 3. Express Refusal to Consider Consistently Low GAF Scores

The ALJ noted that The Plaintiff has been assessed GAF scores "between 31 and 48," but declined to consider them because he does not "find the GAF to be a reliable measure of functional ability." (Tr. 24.) While a GAF score alone is not determinative, the Eighth Circuit Court of Appeals has recognized that GAF scores are relevant evidence in evaluating a disability claim. *See Pates-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009) (a history of GAF scores at or below 50 indicates "serious impairment in social, occupational, or school functioning."); *Brueggemann ,* 348 F.3d at 695 (a history of GAF score of 50 reflects a serious limitation on a claimant's ability to perform basic life tasks; VE testified that an individual with a GAF score of 50 could not work)).

In this case, Plaintiff was assigned a score of 48-52 in March 2010. (Tr . 286.) He was assessed a GAF of 25-35 by Dr. Kralik on September 13 2010. (Tr. 296.) During his in-patient treatment he

7

received scores of 30 and 31 (Tr. 321, 325.)  Given such consistently low scores, the ALJ had a duty to at least consider them in his discussion of Plaintiff's RFC. He did not.

On remand, the ALJ is directed to fully and fairly develop the record and reevaluate Plaintiff's Overall RFC in a manner consistent with this opinion.

### B. Errors in Credibility Analysis

In determining a claimant's RFC, "'the ALJ must first evaluate the claimant's credibility.'" *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d 687, 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). In discrediting a claimant's subjective complaints, an ALJ is required to consider all available evidence on the record as a whole and is required to make an express credibility determination.  *Lowe v. Apfel,* 226 F.3d 969, 971 (8th Cir. 2000).

This Court is concerned by two points in the ALJ's credibility analysis.

First, the ALJ discredited Plaintiff's allegations about his social functioning based in large part on his behavior while undergoing in-patient treatment at  Bridgeway. Specifically the ALJ noted that "the claimant's treatment provider noted that the claimant attended groups, interacted well with peers, and had no behavioral problems while on the unit." (Tr. 24.)The ALJ's only other notations for social functioning were Plaintiff's visitation time with his son, Plaintiff's report of three or four close friends, and a single interaction with his son's teachers where Plaintiff reported that he was calm and appropriate. (Tr. 24.) The ALJ's reliance on Plaintiff's good behavior as a psychiatric in-patient to show work-related

AO72A
(Rev. 8/82)

functional capacity is clear error. *See Hutsall v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001.) ("doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity").

The ALJ also discredited Plaintiff's reports of drowsiness from his medications because he found that "while the claimant's treatment records reveal that he has reported this symptom, there is no indication it significantly affects his ability to function." (Tr. 24.) However, a proper *Polaski* analysis requires the ALJ to conduct an express examination of the dosage, effectiveness, and side effects of all medication. *Polaski*, 739 F. 2d at 1322. Failure to include medication side effects in the hypothetical to the VE, "at a minimum," requires the case to be remanded. *Mitchell v. Sullivan*, 925 F.2d 247, 250 (8th Cir. 1991).

Plaintiff's medications have been adjusted a number of times in the medical record, but the Plaintiff most recently appeared to be taking Saphris,[2] Zoloft,[3] Vistaril,[4] Ambien,[5] and Klonopin.[6](Tr. 403.) All of these can include drowsiness/sedation as a side effect. The Plaintiff complained of medication side effects in several places in the medical record. (Tr. 223, 312, 367, 370, 373, 382, 415,

---

[2]Saphris is a dibenzapine derivative indicated for treatment of schizophrenia and acute treatment of manic or mixed episodes associated with bipolar disorder. Side effects include somnolence and fatigue. http://www.pdr.net/drug-summary/saphris?druglabelid=387&id=3066 (accessed Feb. 19, 2014).

[3]Zoloft is a selective serotonin reuptake inhibitor indicated for treatment of MDD, SAD, PTSD, PMDD, and panic disorder. Side effects include somnolence and fatigue. http://www.pdr.net/drug-summary/zoloft?druglabelid=474&id=1099 (accessed Feb. 19, 2014).

[4]Vistaril is a piperazine antihistamine indicated for treatment of anxiety and tension associated with psychoneurosis and adjunct in organic disease states in which anxiety is manifested. Sedative when used as premedication and following general anesthesia. Side effects include drowsiness. http://www.pdr.net/drug-summary/vistaril?druglabelid=3067&id=1096 (accessed Feb. 19, 2014).

[5]Ambien is an imidazopyridine hypnotic indicated for treatment of insomnia. Side effects include drowsiness and "drugged feeling". http://www.pdr.net/drug-summary/ambien?druglabelid=2515&id=1376 (accessed Feb. 19, 2014).

[6]Klonopin is a benzodiazepine indicted for treatment of seizures and panic disorder. Side effects include CNS depression, drowsiness, and fatigue. http://www.pdr.net/drug-summary/klonopin?druglabelid=3064&id=1249 (accessed Feb. 19, 2014).

418.) However, the ALJ did not elicit testimony from Plaintiff concerning medication side effects, and did not include medication side effects in the hypotheticals to the VE. Nor can this Court find any document in the record that addresses medication side effects in conjunction with Plaintiff's function. Therefore, this Court cannot discern exactly what evidence the ALJ used to conclude that medication side effects did not significantly affect Plaintiff's ability to function. Accordingly, a remand is necessary.

On remand the ALJ is directed to determine what drugs Plaintiff is currently taking, and to expressly consider the side effects of those medications. That consideration must include any cumulative or synergistic effects that might result from taking the drugs in combination. The ALJ is then directed to include those side effects, if any, in hypotheticals to the VE. The ALJ is further directed to evaluate Plainitff's social function in accordance with this opinion.

### V.    Conclusion

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 20th day of February 2014.

/s/ *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)